The next case on the docket for this morning, 233448 Western Missouri, Sean Stearns v. Cathy Dean et al. Good morning, your honors, and may it please the court. My name is Barack Mason, and I'm the attorney representing the appellant, Sean Stearns, in this case. This is an appeal from the district court's granting of summary judgment, finding that appellee Jeffrey Spire, Sergeant Spire, in other words, was entitled to qualified immunity for his actions that he took on May 30, 2020, at the George Floyd protests in the Kansas City Plaza. Since this case is fourth on the docket, I think it bears repeating a few of the key essential facts, just to get your honors recuperated with the background of this case. Mr. Stearns was on the plaza of KC protesting after the death of George Floyd. This was obviously a nationally recognized and covered protest that happened, but during his protest, he was hit by something fired from the direction of the police line. He cannot say what exactly hit him, but something hit him in the eye, fractured his orbital globe, required immediate medical attention, and he has since lost his eye. Given that this case is here on appeal after the granting of summary judgment, this is a de novo review, and the facts of this case are supposed to be viewed in the light most favorable to Mr. Stearns, and all reasonable inferences should be given to him. And when that's done, three facts are abundantly clear. First fact is that Mr. Stearns was on the plaza on May 30, 2020, exercising his constitutionally guaranteed First Amendment right. The second fact is that the munition was fired by Sergeant Jeffrey Spire that hit him in the eye and ultimately caused him to lose that eye. Do we know that? Is there any evidence of that? There's certainly circumstantial evidence that this was the case, and as outlined in the briefing, Sergeant Spire was a grenadier on this police line that was in front of Mr. Stearns. There's evidence in his use of force report that he skipped a shell off of the ground in the general direction that Mr. Stearns was rendering aid to his partner, Ms. Cindy Ragsdale. Was he the only officer that was firing like that? He's the only officer that we could tie use of force report to the video evidence that was submitted on the record. And those two pieces of evidence tie very closely together that this was the shell that hit Mr. Stearns, given he got to the hospital approximately 15 to 17 minutes later, and that's when he began receiving his medical attention. So the use of force report shows that the firing of this munition was, I think, at 11.46, and he was presenting to the hospital a little bit after midnight. So the circumstantial evidence of him shooting in that general direction, tied in with the use of force report and the video showing this, leads to the conclusion that he was the one that actually fired this munition that blinded Mr. Stearns. Mr. Counsel, I can agree that you're entitled to that inference at this stage of the proceedings, but what evidence is there that Mr. Stearns was singled out either as an individual or part of a group? Well, I think that speaks to the third element of the First Amendment retaliation claim, and that evidence, again, is circumstantial. While Sergeant Spire has never said, I saw Mr. Stearns in the crowd. He was rendering aid to Ms. Ragsdale, and I ultimately shot him. That's not there, but what can be inferred from the evidence is he fired at either Mr. Stearns or this group in particular. I'd like to point the court to a few different pieces of testimony, both from Sergeant Spire and from another sergeant on the Kansas City police force. Sergeant Spire says that this munition is not supposed to be shot at an individual. It's more for a group. It's not target-specific, and that it disperses when it hits the ground. Therefore, he was targeting this group in general to disperse the crowd. However, Sergeant Payne of the Kansas City police has testified, and I will give you a quote, that this munition, or I should just say, the question was, would you ever use a baton round to actually deploy gas at a greater distance? Answer, no, it doesn't work like that. The baton rounds that we have with CS in it, it is not designed to affect anyone else except for the one target you're shooting at. And when it shoots, it basically gives a brief cloud of dust. He went on to testify, question, you wouldn't use a baton chemical munition to move a crowd, right? Answer, no, you would use it to specifically address somebody who was assaulting you that you were, you know, targeting to hit with an impact round. That would be it. You wouldn't just fire it into a crowd randomly. So with those two contradictory pieces of testimony, the reasonable inference is that Mr. Stearns was targeted by Sergeant's fire. This is a munition that is designed to be directed at one single person, and that's what happened in this case. The district court said that, I think you used the word tacitly, that Stearns tacitly conceded that this was actually a crowd control attempt. Is that accurate concession on your part? Because what I hear you saying now is that the inference should be made that it was targeting your individual client. I don't think that that was an admission that we made on the briefing. I think what the district court was referring to was the Fourth Amendment claim that we had, where this court has never held that an act that was technically designed to disperse a crowd, which we obviously controvert given this piece of testimony, that that was a crowd control measure. I'm sorry, could you say that again, that what was not a crowd? The fact that it was a Fourth Amendment excessive force claim that was pled. The district court, I think, found that we tacitly conceded that this was not to be analyzed under the Fourth Amendment excessive force, rather the Fourteenth Amendment substantive due process claim. I think that's where the confusion was within the district court's opinion. Counsel, I'm wondering if there isn't a missing link in the inference that you're claiming here. What evidence is there that Mr. Stearns was part of a distinct group as opposed to just general protesters? I think the inference is based on the fact that Sergeant Spire had used handheld munitions to disperse the crowd, and he made the conscious decision to then fire at this specific group or at Mr. Stearns specifically. Whether it was to further disperse this crowd, even though that's not what the munition is technically supposed to be used for, he made the conscious decision to take his service weapon, the grenade launcher, aim it, and fire it at this crowd. So I think that's where the connection is. Isn't the evidence that this skipped off the ground? That is the evidence, Your Honor, yes. So how is that aiming at a group? Well, you're still aiming at the group. He's testified that the skipping of this munition is to slow it down so it doesn't go as far, and given that this crowd was at least 20 yards away, given he couldn't reach them with a handheld munition anymore, that was the decision that he made was to skip it off the ground so that it wouldn't reach beyond this crowd. I think that hopefully answers your question, Your Honor. What case law are you relying on that you can say that the retaliatory act is toward an entire group instead of an individual? I think that this court in the DeMayan case recognized that singled out could be both individually or as part of a group. I can give the court a citation of that. It's 86 F. 4th, 1179, and that this court held that singled out can be both. So you've said initially that the inference that you think that should be taken from the facts is that your client was being targeted individually, but you're also relying on a group targeting? I think it's both, Your Honor. Either way works. If he was targeted as part of this group that Sergeant Spire was trying to disperse in his words, then he was clearly targeted as a part of this group. If he was targeted as Sergeant Payne has testified, that this munition is supposed to be directed at a single individual who is assaulting the police, which clearly was not the case in this case, then he was individually targeted. So I think in both instances, the reading in DeMayan reads that Sean Stearns was targeted. Can I pull you back to the issue of the crowd control? Because as I read the district court's opinion, that is actually linked to the First Amendment retaliatory action when the court says, in fact, he tacitly concedes that what defendants describe as crowd control was what the trooper was attempting. And I think, again, it was either the excessive force claim under the Fourth Amendment that the district court was referring to, or we conceded that that was Sergeant Spire's testimony. So you did not—if it were, in fact, I'll call it simply crowd control, would that do significant damage to your claim? I don't think it would, Your Honor, because this is still an excessive force, and this court has recognized that using tear gas on protesters that are not committing any illegal activity is unconstitutional. But don't you have to be able to raise a material question of fact as to whether the purpose was to retaliate for First Amendment activities as opposed to crowd control? Yes, Your Honor, and the court in Green has stated that if the question of his motive or the officer's motive is not so free—sorry, I apologize— is not so free from doubt as to justify taking it from the jury, then it should be sent to the jury to determine whether Sergeant Spire, in this case, had a retaliatory motive. What makes it so free of doubt? The general facts that the protesters were no longer any threat, and obviously plaintiffs would contest that at any point they were a threat. The handheld munitions, according to— Hadn't it been declared an illegal gathering at that point? And didn't the court have a right to then— didn't the officers have a right to attempt to disperse it at that point? That was Sergeant Spire's testimony again. There's a 35-minute video in which no declaration of an unlawful assembly or an illegal gathering was announced. Mr. Stearns, in his deposition, has also said he was never aware of, never heard any announcement that there was a declaration of an unlawful gathering. I apologize. If it pleases the court, I would like to save the rest of my time for rebuttal. Thank you very much. Thank you. May it please the court. Caleb Rutledge on behalf of the Appalese. And I apologize in advance. This is my first appearance before this court, so I apologize for any nervousness in my voice. I think there's a few things that make this case for this court not as clear. I don't believe that's at fault of the Appalese. What the Appalese attempted to do down below was to make very clear to the district court what facts were properly supported and which facts were not properly denied with pieces of evidence. Perhaps Mr. Stearns disagrees or would genuinely disagree with how things are characterized. But one thing that I think that this court should do is to really look at what the records were as far as statements of uncontroverted material facts and then whether the denials that Mr. Stearns put forth to them were properly controverted. As this court, I'm sure, is aware, at least many district courts have their own local rules that says that if a statement of material fact is not properly controverted, it is deemed admitted. And you might be referring to the fact that there are many facts that the district court found here. In viewing all of the evidence in the light most favorable to Mr. Stearns, we don't have a lot of facts and we don't have that analysis that you're talking about. Is that really proper for us to do that at this point? I mean, do you think that there is enough in this district court opinion that we can actually work with and make a ruling on this qualified immunity issue? I have no doubt that this court can answer the qualified immunity question. I think the question comes down to whose portrayal of the facts must this court accept and whether this court is going to base the facts that it's going to accept on facts that were properly presented in statements of uncontroverted material facts, and whether it's going to say that any of those facts were properly controverted with evidence that was, one, admissible and properly authenticated. So your position is that this court needs to go back and look at the record and determine what facts were controverted and what's admissible and what's not? What the appellees are trying to say is, before we're going to say that any of these key central facts are certainly uncontroverted, such as if we're looking at circumstantial evidence to say that it was indeed the canister that hit Mr. Stearns in the eye, we're going to have to see if whether Mr. Stearns, down below, properly put that in through properly supported statements of additional material facts, if he believes that there was not a fuller picture provided in the statement of uncontroverted material facts provided by both the members of the board as well as the trooper. That's all to say that that's maybe where some of the confusion comes from as far as trying to determine what facts this court has to, should accept per the summary judgment procedures. But this might answer your question a little bit more in another respect. I believe that there's three ways that this court could affirm, two of which is basically a house of cards approach. If you find that Mr. Stearns failed to demonstrate two of these things, or either one of them, then that should undercut all of his claims. And the third one is a little more complicated, but it's still a grounds for affirming. The first one is this. It sounds like at least one member of this court is inclined to believe that it should be a reasonable inference that the canister that the trooper deployed was in fact what caused Mr. Stearns' injury. If the court disagrees, if the court disagrees that, if this court believes that Mr. Stearns failed to properly controvert that at the district court level, then Mr. Stearns can't show causation, which means he can't show a First Amendment retaliation claim. He can't show a 14th Amendment substantive due process claim. He can't show any of the state claims, nor can he show any claims against the board. You do agree, don't you, that we have to look at the facts in the light most favorable to Mr. Stearns, as well as reasonable inferences? That's correct. Yes. I'm sorry, Judge. I'd like to focus, if we could, just on one that we talked about earlier, and that's whether he was singled out, either as an individual or part of a group. And so Mr. Mason says, well, there was testimony from the defendant that is sufficient to create an inference that he was targeting Mr. Stearns and his companion. What's your response to that? I would say if there is evidence, I'm not sure what that is, especially if you were to look through the summary judgment documents themselves. Well, I think it's the testimony as to what this weapon would be used for. Yes. And I believe if we want to look into the specifics of those depositions, what you'll see is, at least in the eyes of the trooper, and I believe anybody else who would use these, they're not saying that they were using these to try to harm anybody. What they're using this is to disperse a crowd. In fact, I believe my friend on the other side evenly, though this wasn't a tacit concession, this was a concession right up here, that this was to disperse the crowd. As far as just trying to say, well, the trooper didn't like the message of what the protesters were conveying, there's no evidence of that. I'm not sure that would be even a fair, reasonable inference based on what the court had in front of it, based on what the parties put in the statements of uncontroversial material facts or the statements of additional material facts. Well, and I'll move on ahead to the second point, since Judge Grass, you just mentioned this. If Mr. Stearns cannot prove to this court that there was a retaliatory animus that was targeted specifically at Mr. Stearns, I believe that also undercuts any other claims of malice. If, as it sounds like, I believe I heard a few minutes ago, counsel Mr. Stearns saying that this was to disperse the crowd, that, I believe, completely undercuts any claim that this was with a retaliatory animus. I think this is further buttressed by the cases from this court, courts such as DeMayan or DeMean, as well as Aldridge. I think both of those cases actually show that whenever there's a, even in those cases, those cases make it stronger here, because as we mentioned in our briefing, unlike in those cases, there's no evidence that the trooper or really anybody else knew that Mr. Stearns himself was there. We're not trying to say, well, nobody knew what Mr. Stearns' name was, nobody knew where Mr. Stearns' address, that's not the point. The point is, how is it that this court can find that the trooper targeted Mr. Stearns specifically for his protected and expressive conduct if the trooper or anybody else did not know that Mr. Stearns was there? I think that is a major gap in this argument, and because of that, it sounds like Mr. Stearns has to rely on this group, this targeting group theory, which I don't believe DeMayan actually works in favor of Mr. Stearns in that respect. I believe that's what my friend on the other side attempted to suggest, but one, DeMayan wasn't cited to the district court down below. I believe DeMayan came out after the summary judgment briefing even happened. So, but that doesn't harm the appellees, because they can raise this argument to show whether it has to do with clear establishment, or just showing that this court is already, would think, at least by the time it issued its 20, I believe it was a 2023 opinion, DeMayan or DeMayan, that, again, absent the trooper even knowing somebody is either individually there or as a member of a group, I scratch my head trying to figure out how it is that the trooper could have any sort of retaliatory animus to somebody that there's no evidence of the record that the trooper knew was there. I hope that answers your question, Judge Grassley. So I'll go ahead and respond to a few other things that were mentioned. What about this idea, though, that maybe he doesn't have to prove it, he has to raise a question of fact, right? Yes. And the argument is that it was crowd disbursement, but at least arguably undermining that, or at least raising a fact question, whether there was an announcement that the crowd was illegal, some sort of period of time to allow them to disperse, that sort of thing. Is that enough to raise a fact question that maybe this is not crowd disbursement but is actually a retaliatory, First Amendment retaliatory? If it was properly controverted that there was no dispersal order, I think this case could be different. But the fact is it wasn't properly controverted that there was no dispersal order given. I believe that there were several citations to multiple witnesses who said there was a dispersal order given. I think it was around the 945 mark of May 30. Just the fact that Mr. Stearns did not hear the dispersal order does not mean there was not a dispersal order given. If Mr. Stearns would like to say, well, I had a radio frequency going on where I was able to hear anybody that night, if a dispersal order would have happened, I would have heard it. That's one thing, and that's one thing that he did not say. But just the fact that Mr. Stearns... So the dispersal order has to be given to the crowd, not to the other officers. Correct, correct. I'm sorry, Judge Warren. I don't mean to suggest that he had to have heard it. The point is just because Mr. Stearns didn't hear it at a particular moment does not mean that it was not given. And I believe in the properly supported statements of material fact, it was shown that a dispersal order was given. I think another point that actually undercuts the claim that this was trying to target anybody is the fact that it was. Again, assuming that what caused Mr. Stearns' injuries was this canister, the fact that it was skipped. Because I suppose if somebody really wanted to have more accuracy to harm an individual target, they wouldn't have tried skipping it. Because from what I understand from the trooper's deposition testimony is that as soon as it's launched, these pieces have to open up for the gas to begin to disperse. But if it's to skip it, I don't see how that strengthens the targeting claim. On top of that, when it's skipped, it actually slows it down. One of the reasons they skip it is if they're going to deploy this airily, if they're trying to deploy it so it goes over the crowd, they're trying to make sure that those pieces are going over the crowd. So the gas will disperse to have the effect on the crowd to have them disperse. But the intention is not to have those pieces hit anybody. But if you're afraid of hitting somebody on the other side, you have to find another way to deploy it. So by skipping it, it's, one, going to slow down the pieces that come out. But it's also to ensure that the effect of the gas is moving forward as opposed to just staying above them or coming back the other direction. I think perhaps one other piece of confusion that may come towards this idea of targeting a group, which, again, from how I read cases such as Aldridge and DeMayan, and even Green, for that matter, which I believe is one of the cases that this report mentions specifically, is that there has to be something, there has to be enough, if it's a matter of summary judgment, there has to be something in there. There has to be enough evidence. Well, in fact, let me just get a specific language here. Yeah, I think, and I forget if we included this in our brief, but this is some of the language. This is in the DeMayan case. This is at page 1183. And I've included language for Mr. Stearns here. This is the argument we're making. DeMayan gives even more reason to hold that Mr. Stearns' claims fails. Like in DeMayan, Mr. Stearns can point to no evidence in the record that Mr. Stearns had any interaction with the trooper, that the trooper was aware of Mr. Stearns' presence, or that Mr. Stearns did anything to differentiate himself from the other protesters in the crowd. Nothing in the record shows that the trooper directed his action towards Mr. Stearns. I think perhaps one final point that I'd like to make, that I'm sure this Court is aware of, is the context here is very important. You might read through some parts of Mr. Stearns' deposition, as well as just some of the briefing that sometimes does, sometimes does not have citations. But if you're going to look at the statement of uncontroverted material facts, you'll see that this was not just a group of entirely peaceful protesters. If that were the case, that would help. Again, that would help Mr. Stearns' claim. But the fact is, if you were to look at the evidence that's in the summary judgment record, the fact is the trooper and everyone else on the front lines was facing a group that would move to one side of the street, throw things at the officers, come back, have gas dispersed. They would go back and forth. That was the situation that the trooper faced. And for those reasons, this Court should affirm the District Court. Thank you. Thank you, Mr. Rutledge. Thank you, Your Honors. And I just want to address a few of the points that co-counsel made during his argument. And I quoted this. He asked, whose portrayal of the facts must this Court accept? And that's obviously the facts that support Sean Stearns' claims. The Court is supposed to view those facts in a light most favorable to him, no matter what other testimony might say, which in this case would be Sergeant Spire's testimony saying, I wanted to disperse the crowd. I wanted everyone to be gone. I never saw him. Do you think that the District Court gave you the benefit of all inferences? I don't believe so, Your Honor. And where? Where did the District Court go wrong in your view? Well, I think the District Court went wrong when they didn't necessarily consider the circumstantial evidence that supported the claims here. Circumstantial evidence, again, was that he fired this munition in a general direction or taking Sergeant Payne's deposition testimony directly at Mr. Stearns. And to briefly address what he said about Mr. Stearns did nothing to differentiate himself from the other protesters, at the time he was hit, he was rendering aid to his partner, Ms. Ragsdale, and subconsciously that could have differentiated himself in Sergeant Spire's eyes. We obviously don't know, and we don't have that testimony from Sergeant Spire, as it benefits him to say, I had no idea he was there. I was just firing to get everyone to disperse. But given the circumstantial evidence and everything that happened in this case, there's a reasonable inference that he actually did target Mr. Stearns. Merely because he was kneeling down and rendering aid to someone else? That could obviously show malice if that happens to be what the jury believes. I'm just thinking off the top of my head that could be something that potentially differentiated himself from the other protesters in this moment. Could be. Could be. Maybe. Could be. Sounds like a stretch. And that very well might be the case, but, again, given the reasonable inferences and evidence most favorable to Mr. Stearns. Can I ask you a question? Yeah, of course. I didn't see a lot of argument on the Fourth Amendment claim. Have you abandoned that? Didn't necessarily abandon it. It's mentioned in the briefing, but because this court, even to this day, has not extended the Fourth Amendment to this type of munition, didn't feel it was best use of our pages and length requirements, and that's why we focused on the Fourteenth Amendment substantive due process claim more so. But, again, if this court decides that it wants to expand the Fourth Amendment excessive force claim to cover this type of munition, we would obviously welcome that opinion. And as for the district court . . . Probably better to make the argument if you expect us to expand it. I understand, Your Honor. But in closing, I see I'm almost out of time. Whether Sergeant Spire had a retaliatory motive and chose to single out Mr. Stearns as a group or individually is ultimately a question for the jury to decide. We believe that the district court stepped into the jury's shoes, decided a controverted fact, and then granted summary judgment finding qualified immunity. We believe that was an error, and we would ask that this court reverse and remand the case. Thank you, Mr. Mason.  The court appreciates both counsel's appearance and argument. The case is submitted.